# UNITED STATES DISTRICT COURT
for the

District of Alaska

RECEIVED
DEC 28 2023
CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

____3____ Division

Theresa Margaret MacDonald

*Plaintiff(s)*
(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)

-v-

Debra Haaland, Secretary of the Interior, Darryl LaCounte, Director of Bureau of Indian of Affairs, Indian Services and Melanie Bahnke of Kawerak Inc.

*Defendant(s)*
(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)

Case No. 3:23-cv-00291-SLG
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* [ ] Yes [✓] No

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Non-Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Theresa Margaret MacDonald |
| Address | 2535 West 69th Court |
| | Anchorage, Ak 99502 |
| | *City / State / Zip Code* |
| County | Anchorage, Alaska United States |
| Telephone Number | 907-268-1599 |
| E-Mail Address | terialaskan@gmail.com |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

**Defendant No. 1**

| | |
|---|---|
| Name | Debra Haaland |
| Job or Title *(if known)* | United States Secretary of the Interior |
| Address | 1849 C Street, N.W. |
| | Washington, DC 20240 |
| | *City / State / Zip Code* |
| County | Washington, DC United States |
| Telephone Number | (202) 208-3100 |
| E-Mail Address *(if known)* | |

☐ Individual capacity ☑ Official capacity

**Defendant No. 2**

| | |
|---|---|
| Name | Darryl LaCounte |
| Job or Title *(if known)* | Director of Bureau of Indian Affairs |
| Address | 1849 C Street, N.W. |
| | Washington, DC 20240 |
| | *City / State / Zip Code* |
| County | Washington, DC United States |
| Telephone Number | (202) 208-3100 |
| E-Mail Address *(if known)* | |

☐ Individual capacity ☑ Official capacity

Defendant No. 3
    Name: Melanie Bahnke
    Job or Title (if known): Kawerak, Inc. President
    Address: P.O. Box 948
    City: Nome    State: AK    Zip Code: 99762
    County: Nome United States
    Telephone Number: (907) 443-5231
    E-Mail Address (if known): contact@kawerak.org

    ☐ Individual capacity   ☑ Official capacity

Defendant No. 4
    Name:
    Job or Title (if known):
    Address:
    City:    State:    Zip Code:
    County:
    Telephone Number:
    E-Mail Address (if known):

    ☐ Individual capacity   ☐ Official capacity

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A. Are you bringing suit against *(check all that apply)*:

   ☐ Federal officials (a *Bivens* claim)

   ☑ State or local officials (a § 1983 claim)

B. Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?
   25 U.S.C. 1901(1)(2), 1902, 1903, 1921, 1916 (a)(b) et seq. & Rule 5.1. Constutional Challenge
   25 CFR 23.137, 25 U.S.C. 1911, 1912, or 1913, 1914,1915,1916,1917,1920,1921
   (Pub.L.95-608,titleI,104,

C. Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

## III. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. Where did the events giving rise to your claim(s) occur?

April 09, 2019, Marirose Pushruk was born, at the Alaska Native Medical Center. Office of Children Services notified me Theresa Pushruk Margaret MacDonald. She was to be placed into my home, however she experienced a health concern and since I did not have a crib. It was changed that when I was offically an ICWA Relative Licensed Foster home, February 28, 202, I had to purchase a crib and Marirose Pushruk gained her health, ICWA Indian Child MR then placed was permanently plced with

B. What date and approximate time did the events giving rise to your claim(s) occur?

At the Alaska Native Heritage Center on October 24, 2023 after the Native survivors of fedral boarding schools coalition, here in alaska spoke their speeches and after the dance cermony, before everyone in the building exited out of the building to view the first healing ceromoney totem pole stand in the gound. I handed over the Writ of Certiorari over to Debra Haaland the Secretary of Internal Aa

C. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

## IV. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

The impact of the plantifs inuries, are emotional distress for Theresa MacDonald and Marirose Pushruk, briefed to communicate intervention counseling for pre and post reunification separation supportive counseling interventions. Distress emotional and wear tear on car, computer printer and time after time thinking of her and her thinking of me. Her wanting her IPAD, computer and other schooling stuff, her wanting her ICWA family and friends and traditional culture, dancing, picking berries and being arund other ICWA childrean and families and not NONNatives.

## V. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

Amend the Indian Child Welfare defining family as family where it's blood related of two or more persons related, live together, had lived together related persons are considered blood members of the family from great, great, great, great, great grandparents. Amend Tribes duty to support all ICWA cases a successful reunion to resolve reconcilation support the floursinging child even if they requied effort filing supportive documents requied for ICWA child obtain services during a Natual Disaster, Emergency Disaster, Epidemic, dying, death, or relocated services are required a healing reconciliation, of all parties being successful reunion supply all services supported a healthier foundaiton for the relationship to flourish once again for ICWA child and famly. Responsibilites of the Tribe, Indian Services and the Interior of all Indian Affairs leaving no lingering issues even if Indian Child is admitted into a medical facility on the reservation or off the reservation supporting the ICWA family assuring support/help for each other alleviate no burdens and restore equilibrium for ICWA family pre and post of sickness of ICWA child or all ICWA family.

Reverse, overturn and cancel the adoption of Marirose Pushruk, meaning vacate, annul, I mean annulment of this adoption reversing in place all parties-binding canceling due pursuant process indicaticating suit to annul. her from these non-native people who she is not related to by no means or how. I want to be paid for the lawyer fee that I have done, including all the efforts of the office equipment, time, leave from work and the missed time that I was kept from ICWA Child all the Christmas time, Birthday time and the repair of the scars in the heart (emotional distress) it's they haved caused her ICWA Child MRP and Theresa MacDonald 1.9million.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 12/28/2023

Signature of Plaintiff: *Theresa Margaret MacDonald*

Printed Name of Plaintiff: Theresa Margaret MacDonald

### B. For Attorneys

Date of signing: 12/28/2023

Signature of Attorney: *Theresa M. MacDonald*

Printed Name of Attorney: Theresa MacDonald

Bar Number:

Name of Law Firm:

Address:

City / State / Zip Code:

Telephone Number: (907) 268-1599

E-mail Address: terialaskan@gmail.com

Complaint Violation: Defendants: Debra Haaland, Secretary of the Interior, Darryl LaCounte, Director of Bureau of Indian of Affairs, Indian Services and

Questions: The specific Answers listed below are the following:

III. State Claim.

A. Where did the events giving rise to your claim(s) occur?

A. April 09, 2019, MRP was born, at the Alaska Native Medical Center. Office of Children Services notified me Theresa Pushruk Margaret MacDonald. She was to be placed into my home; however, she experienced a health concern and since I did not have a crib. It was changed that when I was officially an ICWA Licensed Foster home, had a crib and MRP gained her health, ICWA Indian Child then placed into ICWA Relative Licensed Foster Home. MRP resided/placed into ICWA Relative Licensed home on March 2, 2020, and Theresa Pushruk Margaret MacDonald home. November 10, 2020, Approved Adoption Home Study was done positively in the name of Theresa MacDonald referencing approval to adopt ICWA, her ICWA family MR.

B. What date and approximate time did the events giving rise to your claim(s) occur?

At the Alaska Native Heritage Center on October 24, 2023, after the Native survivors of federal boarding schools' coalition, spoke their speeches and after the dance ceremony, before everyone in the building exited out of the building to view the first healing ceremony totem pole stand in the ground. I handed over the court documents and stated to her (Debra Haaland) that they are going/trying to adopt out Indian Child MR to nonnatives and that I needed her help. My cousin witnessed this communication. and so did Debra Haaland co-workers, and staff. I explained to Debra Haaland Secret

C.


Debra Haaland received 190 co-stewardship agreements signed in 12.13.23 by the US administration," Haaland said. "Tribes from coast to coast are playing a greater role in the management of the lands and waters they have cared for since time immemorial."

The statement is sure to states tribes in Alaska. A delegation of tribal, local government, and Alaska Native corporation leaders from there have complained to Congress in recent weeks that Haaland wouldn't meet with them to hear their views, which generally favor oil development in their region.

The executive order includes provisions intended to make it easier for tribes to access federal funds, while adding flexibility and eliminating onerous reporting requirements. You have given the tribes in Alaska billions $46 billion to the tribes of the ICWA child tribe holder/overseer and to the tribe of the extended family but leave them in a huge crevasse to fall out into a day of Day of reckoning. Kawerak is the tribe holder of ICWA child MRP and over ICWA Indian Custodian Extended family Theresa Margaret

1

MacDonald who is enrolled with King Island Native corporation, and they have received 8 million March 25, 2022, and $4.6 Million, September 13, 2022, and $1.5 million on Mar 21, 2022. Listed under Kawerak are King Island and Mary's igloo. Kawerak controlling the Entity and that region, when were here in Anchorage, Alaska there was no hope for justice just housing and medical care, but no help whatso, ever. Kawerak, Secretary of Interior and the Indian Services itself proven a dereliction of duty to the ICWA child MRP and ICWA custodian knowing and refuses to assist to help and does not wish to. The tribe assistant, the supervisor and the stake holder listed here are Kawerak, Inc., overseer, Melanie Bahnke, Debra Haaland, Secretary of the Interior, Darryl LaCounte, Director of Bureau of Indian of Affairs, Indian Services. All three are/have proven now with this a Derelict of Duty of there positions. Tribal leader is responsible for the public safety, welfare of the people of withing the tribes itself, because they continue to receive millions from the government this tribal leader and leaders are to prevent, protect the ICWA child and ICWA Indian Custodian from all incidents of all types especially from the State of Alaska who has taken ICWA child and placed her permanently into Nonnatives home with other Nonnative children removing her from her ICWA traditions, clan, culture and her elders. They have failed to make amend or be responsible for editing, repairing, adopting, repealing an tribal ordinances/codes for a change to a change or vouching a validation of ICWA child MRP or Indian Custodian Theresa MacDonald of any kind what so ever. All ICWA children deserve to be respected verifying to be advocated for against the captivity over sickness, be removed from ICWA Extended family and thrown into a nonnative foster home a out of preference placement home.

What are the facts underlying your claim(s)? (For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)

Fact Debra Halland Sec. knew ICWA child MRP was going to be adopted out to known nonnatives, post COVID 19 of MRP fallen sick with no white blood cells no Native Services of funds stepped into to prevent her from leaving the home so that she ICWA child can be safe from further diseases or sickness. During the time she was admitted for 2 years she never received Indian Services of respite preventing her from leaving the home or after being discharge during all her entire sickness of December 23, 2020 all they way to January 2022 no Tribal Services funds assisted with alignment for what it says in ICWA that the To protect Native children, ICWA requires that the state agency: • Provide active efforts to prevent the breakup of the family, • Provides greater protections to parents and others standing in their place to ensure that children are not removed unnecessarily to include that I and ICWA child MRP did not receive the services promised by BIA ICWA preventing the breakup of families and ensuring the last resort is the permanent removal of an AI/AN child from the custody of his/her AI/AN parent or Indian custodian and per Dorthy Pushruk who is the biological mother granted me as an Indian Custodian it's written (proof) that she as biological mother of ICWA Child stated in letter that she as the mother wanted MRP with ICWA family who is I (Theresa MacDonald).



2

# III. Statment of Claim

The Bureau of Indian Affairs announced today that approximately $2 million was awarded for grants to Indian organizations to help support off-reservation child and family service programs under Title II of the Indian Child Welfare Act (ICWA).

Indian off-reservation child and family service programs provide services for stabilizing American Indian and Alaska Native (AI/AN) families and Tribes, preventing the breakup of families and ensuring the last resort is the permanent removal of an AI/AN child from the custody of his/her AI/AN parent or custodian.

As for I am the Legal ICWA Relative Positively Approved professionally approved documented adopted family who is a traditional dancer, works for tribal organizations and is culturally connected for my family being a descendant of King Island, I was to be given free lawyer, and represented by tribal or the Alaska Tribal Justice Center and was turned down by everyone in the United States to saving this ICWA Child from the Natives. We are ICWA and an ICWA family. The criteria below is invalidated of all specific, because MRP ICWA Child Native Alaska is in a nonnative home and not allowed to dance with Alaska Native people and not allow to see her cousin Isabella Pushruk or her Anite Deanna Theresa Pushruk and can't even see her elders or go to the Alaska Federation of Natives with Native people, because she is not allow to, state OCS kept her captive and all the following officials prevented to keep her safe from where she is at now. All the below was to protect her and a derelict of duty of all three of these people let her be captive.

The Indian Child Welfare Act Updated January 2021 The Indian Child Welfare Act (ICWA) was passed in 1978 in response to the large numbers of Native children who were being separated from their parents, extended families, and Tribes through state child protection and private adoption agencies. Congress declared that ICWA was intended to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families" (25 U.S.C. § 1902). Today, Native children remain much more likely to be involved with OCS than white children. ICWA applies to every child protection case in state court where the child is an Indian child who is either a member of a federally recognized tribe or eligible for membership. It also applies to private adoptions, guardianships, or third-party custody matters (i.e. where a grandparent is asking for custody). To protect Native children, ICWA requires that the state agency: • Provide active efforts to prevent the breakup of the family • Notify the Tribe of the case • Allow the Tribe to be formally involved in the case in state court • Transfer the case to the Tribal Court if the Tribe accepts jurisdiction, and neither parent objects, in most cases • Requires that OCS follow specific placement preferences to keep children with their family and Tribe • Provides greater protections to parents and others standing in their place to ensure that children are not removed unnecessarily Intervention: • The Indian Child's Tribe can intervene, or become a party, to a state case • Will get to tell the state court what the Tribe wants to see happens throughout the case • Will get discovery (documentation) from OCS (roughly every 3 months) • As a party,

must disclose to other parties all known relatives and suggested placements for the child, and must summarize tribal services and tribal court actions involving the family Protections for Parents: • Must be provided an attorney at the State's expense, if they cannot afford their own • State must meet a higher burden of proof to take children away, and to terminate parental rights • State is required to make greater efforts to promote reunification Indian Custodians: • If another Native family member is providing care to a child, OCS should treat them as "standing in" the parents' shoes, if the Native family member EITHER: o Has legal custody of the child under Tribal law or custom, or state law; OR o Has been given temporary care custody or control of the child by the child's parent • Indian Custodians are entitled to the same right to an attorney, for protection from unwarranted removal, and efforts to reunify as parents Active Efforts: • More than just giving parent or Indian Custodian a to-do list; hand-hold through the process • Must be timely and realistic for the parents or Indian Custodian given their circumstances (i.e. can they access the services or resources where they live) • Affirmative, active, thorough, and timely efforts intended primarily to maintain or reunite an Indian child with his or her family • Should be culturally-appropriate, with Tribal and extended family involvement in creating and implementing any services or supports Placement preferences: • Should be least restrictive setting which most approximates a family where special needs, if any, can be met and shall be based on prevailing social and cultural standards of the Tribe • Tribe defines "extended family"; non-Native and Native family members are considered equal

December 28, 2023
Offically Submitted By:
Theresa M. MacDonald
Dec 28, 2023